FILED

JUL 26 2019

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

**CIV 19    683R**

| | |
|---|---|
| KIMBERLY S. WOMACK, | ) |
| | ) |
| Plaintiff, | ) Case No. CIV-_____ |
| | ) |
| v. | ) |
| | ) **COMPLAINT FOR DAMAGES:** |
| MERCY HOSPITAL | ) 1) DISABILITY DISCRIMINATION |
| OKLAHOMA CITY, INC, et al. | ) 2) HARASSMENT/HOSTILE WORK |
| | ) ENVIRONMENT |
| Defendants. | ) 3) FAILURE TO PARTICIPATE IN THE |
| | INTERACTIVE PROCESS |
| | 4) FAILURE TO ACCOMMODATE |
| | 5) FAILURE TO PREVENT |
| | HARASSMENT AND DISCRIMINATION |
| | 6) RETALIATION |
| | 7) WRONGFUL TERMINATION |

**DEMAND FOR JURY TRIAL**

**COMPLAINT**

Plaintiff Kimberly Womack, for her cause of action against Defendant Mercy Hospital, alleges and states as follows:

### The Parties

1.     Plaintiff Kimberly Womack is and at all relevant times has been a resident of the Western District of Oklahoma.

2.     Defendant Mercy Hospital Oklahoma City, Inc., et al. is a domestic not for profit corporation with its principal place of business located within the Western District of Oklahoma.

1

3.     Plaintiff is informed and believes and thereon alleges that the Defendants(s)
are responsible in some manner for the occurrences herein alleged and plaintiff's
damages as herein alleged were proximately caused by those defendants.   On
information and belief,  plaintiff makes all allegations contained in this Complaint
against the Defendant and its agents and employees.  Plaintiff is informed and
believes and thereon alleges that at all times herein mentioned that defendants and
each of them were the agents servants and or employees of each and every other
defendant and that all acts and omissions herein complained of were performed
within the course and scope of said employer Mercy Hospital Oklahoma City, Inc.

<u>Jurisdiction and Venue</u>

4.     The Court has subject matter jurisdiction over all of Womack's claims
pursuant to 28 U.S.C. § 1331, as each of those claims arise under federal law, *i.e.*
the Americans with Disabilities Act of 1990, as amended.

5.     The Court has personal jurisdiction over the Defendant because its principal
place of business is the State of Oklahoma.  The practices and policies which are
complained of by way of the Complaint were enforced in the County of Oklahoma
County, State of Oklahoma.   At all relevant times alleged herein, Plaintiff is
informed and believes and thereon alleges that Defendant Mercy, and at all times
relevant hereto was, a corporation existing under and by virtue of the laws of the
state of Oklahoma, with its place of business, in the state of Oklahoma.  Plaintiff is
further informed and believes and therein alleges, Defendant Mercy, is authorized

2

to do business in the state of Oklahoma and does conduct business in the state of Oklahoma.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because all or part of Womack's causes of action arose within the Western District of Oklahoma.

<u>Factual Allegations</u>

Plaintiff, Kimberly Womack, based upon personal knowledge as to all acts or events that Plaintiff has undertaken or witnessed, and upon information and belief as to all others, complains and alleges, as follows:

7.      Womack is a female with an actual disability that substantially limits one or more of her major life activities and/or was regarded as having such a disability. Specifically, Womack suffers from complex post-traumatic stress disorder as a compounded result of the psychological and physical trauma she endured on October 1, 2017, during the mass shooting at the Route 91 Harvest music festival, in Las Vegas, Nevada.

8.      Womack asserts that she is a "qualified individual with a disability" under the Americans with Disabilities Act of 1990, 42 U. S. C. §12101 et seq. 2. Womack's disabilities substantially limit her concentration, focus, memory, speaking, working, driving, fine motor skills, and sleep. Additionally, Womack's disabilities cause her to suffer from agoraphobia, feelings of alienation and detachment from others, *extreme* distrust/fear, reoccurring intrusive thoughts,

3

traumatic nightmares, avoidance, tremors, mental fog, panic attacks, trouble finding words, flashbacks, hyper-arousal and reactivity to threats, numbness, GI upset, headaches, hypervigilance and heart palpitations, etc.

9.     Plaintiff Womack is, was and at all times during her employment with Defendant Mercy, a qualified, skilled individual who also possessed the education, experience, license and specialized training to perform Plaintiff's essential job functions. Womack suffered a devastating and life changing disability in October, 2017. At times, following Womack's disability, she required no accommodation to perform her essential job functions but there were times when Plaintiff Womack's disability required her to have job aides and accommodation in order to perform the essential duties she was capable of performing.   Plaintiff Womack requested from Defendant Mercy, reasonable accommodations, to perform her essential job functions, through the interactive process, verbally and in writing, numerous times since January of 2018 until April of 2019, but was virtually ignored by Defendant Mercy.   After months of Defendant Mercy's refusal to acknowledge Plaintiff Womack's disability and her need for accommodation, Defendant Mercy gave Plaintiff Womack an inaccurate, unwarranted written reprimand, on October 31, 2018, with portions redacted/amended early November, 2018 after Plaintiff Womack provided proof of inaccuracies (e.g. text messages for dates Defendant accused Plaintiff of "no show"; provided copies of reports Defendant stated Plaintiff had not performed, etc).   After receiving the written reprimand from

Defendant Mercy, Plaintiff Womack requested an opportunity to transfer into another position.  In early November, 2018, Plaintiff Womack formally notified her supervisor, made a formal online application for an open position for which Plaintiff was qualified and having been given a referral for by another co-worker. Plaintiff Womack's referring party set up an informal meeting between Womack and the director for the prospective position.  On or about November 9, 2019, Plaintiff Womack met with the director of the open position Plaintiff had applied for.  Upon Plaintiff's arrival the director stated that she was surprised to see Plaintiff and further stated "someone from HR called and said, not to meet with you".  However, the director continued to meet with Plaintiff Womack where Plaintiff Womack attempted to explain her qualifications for the job, while also feeling obligated to explain her circumstance and defend her reputation because of the questionable, humiliating and embarrassing interference from HR.   Upon completion of Plaintiff's meeting regarding the new position, the director informed Plaintiff Womack that she thought Plaintiff Womack would be a good fit and was qualified for the position.  The director further stated that "it is up to each leader whether or not to continue the hiring process for an employee with a written reprimand" and that she/director would like to move forward with the hiring process.  The director stated that she would contact Plaintiff the following week but Plaintiff never heard from her again, even after Plaintiff tried to reach out. Defendant Mercy's human resource department efforts to harass and block

5

Plaintiff from any type of work within the organization revealed Defendant Mercy's true intent.   Defendant Mercy's failure to engage in the interactive process, their failure to provide appropriate accommodation or job aides as requested, their harassment, abuse, and hostile work environment, refusal and block of Plaintiff's internal transfer caused Plaintiff's disability symptoms to become increasingly exacerbated to the point that Plaintiff was forced to take paid time (PTO) off and utilizing her short term and long term disability benefit. Plaintiff alleges that Defendant Mercy was the proximate cause for Plaintiff's necessity to take additional PTO, and apply for short and long term disability insurance benefits. Defendant Mercy's negligent actions ultimately led to Plaintiff Womack's termination for utilizing long term disability benefits.   In March, 2019, upon written notice of termination for utilizing long term disability benefit, Plaintiff Womack contacted human resource manager inquiring of alternative options to termination.   Plaintiff Womack plead with Defendant Mercy's human resource for any solution to keep her job and remain employed.  Plaintiff informed Defendant that she was capable and willing to work and perform all of her essential job functions but that she still required assistance from human resources department for some accommodations and perhaps most importantly, education of managers regarding Plaintiff's disability, so that she could work without judgment and harassment.   Plaintiff inquired about the possibility of re-visiting her options and asked if a meeting could be scheduled with Plaintiff's supervisors. Defendant

Mercy's human resource manager stated that there were no further options or discussions, that due to Plaintiff Womack's inability to return to work 100% and no foreseeable full recovery, and because Plaintiff Womack would be moving into long term disability status, Plaintiff was terminated.    Plaintiff asserts that Defendant Mercy's actions were intentional and maliciously planned.    If Defendant Mercy would have made reasonable accommodations to Womack during her time of exacerbation of disability, rather than harassed, bullied and retaliated against Plaintiff for asking for accommodation, Plaintiff Womack could have remained working.   Womack's long term disability benefits were optional benefits that not all Mercy employees opt and pay for.   Plaintiff Womack paid for short and long term disability benefits for several years prior to her disability. Defendant Mercy's refusal to engage in the interactive process, their insensitivity and ignoring Plaintiff's request for reasonable accommodation, allowing and/or creating a hostile work environment and their harassment and intimidation all led to Plaintiff's unnecessary suffering.    Had Defendant Mercy provided simple workplace accommodations and a small amount of sensitivity and understanding regarding Plaintiff's disability, Plaintiff could have remained employed and most likely retired, working in the career she had built over the past 30 years and depended upon for financial security for herself and her family.    Defendant Mercy's actions and inactions eliminated the possibility for Plaintiff to remain gainfully and satisfactorily employed.   Not only did Defendant Mercy make it

impossible for Plaintiff Womack to work given her disability but Defendant Mercy terminated her because of her disability and her request for accommodation. In addition, in the months following Defendant Mercy's hostile and discriminatory termination action of Plaintiff, on April 9, 2019, Plaintiff Womack, given the progressive nature of her disability pursuant to counter supportive actions, has been completely unable to trust, developed severe agoraphobia and isolation, inability to cope and/or perform simple day to day tasks for herself and her family, detachment from family and social groups, loss of positive emotional feeling/ numbness, intense fear and anxiety, etc. Plaintiff Womack has described Defendant Mercy's actions as equivalent or worse than that of the terrorizing attack and mass shooting by cowardly gunmen where Plaintiff Womack was a victim and survived. Plaintiff Womack has immense difficulty reconciling how humans can commit such heinous acts towards their fellow man (e.g. scheming and desiring to eliminate/kill). But, as difficult as it is to understand how a stranger can commit such a heinous act, Plaintiff struggles with the fact that she had built solid, positive, trusting and close, personal working relationships with her peers and supervisors but that they secretly planned and schemed, harassed and bullied her after she became disabled and asked for assistance/ accommodation, ultimately seeking and carrying out her elimination. As a result of Defendant Mercy's elimination/termination of Plaintiff Womack, Plaintiff has suffered severe, unrelenting symptom exacerbation of her PTSD disability and

psychological and physical breakdown because of Defendant Mercy's constant threats that were ultimately carried out, devastating Plaintiff Womack.

10.     Womack is and at all relevant times, been licensed and working as a Registered Nurse, in the State of Oklahoma, since 1994.

11.     Womack was a long-term loyal and dedicated employee of Defendants who began her employment with Defendant Mercy in or around November, 2011.

*12.*     In 2015, Womack transferred from her position as a Registered Nurse in surgical services to a position of Clinical Advocate for the oncology unit at Mercy Hospital.

13.     Womack performed the duties and responsibilities of her position as a Clinical Advocate in a competent and satisfactory manner, receiving positive performance reviews prior to her disability and in July, 2018, after disability occurred.

14.     Womack informed Mercy, through her supervisor and Mercy's Human Resources Department, about the onset of her disability and the substantial limitations that the disabilities caused her.

15.     Womack suffers from complex Post Traumatic Stress Disorder, hereinafter referred to as PTSD, which is a disability manifested by symptoms that can change over time without the diagnosis changing.   PTSD is defined in DSM-5 as a "Trauma and Stressor Related Disorder".  "PTSD is a life altering disability that results from the experience or witnessing of traumatic or life-threatening events.

The stress that results from traumatic events precipitates a spectrum of severe and disabling psycho-emotional and physiopathological outcomes. PTSD has profound psychobiological correlates, which can impair the person's daily life and be life threatening. The intensity and duration of these symptoms can vary considerably from person to person. However, all people with PTSD have problems that are severe enough to diminish their ability to participate in everyday life. Complex PTSD, which is also referred to as 'disorder of extreme stress', results from exposure to prolonged traumatic circumstances. Social support and coping are both instrumental in relation to the severity of PTSD symptoms, optimal functioning, as well as overall survival rates. Many studies have demonstrated a clear relationship between social support and the intensity of PTSD symptoms. Researchers have concluded that lack of social support and poor quality of support were among the most important predictors of PTSD symptoms exacerbation. The relationship between PTSD symptoms and social support is included in most psychosocial models of PTSD. Supportive and conversely counter supportive interaction with individuals with PTSD play an important role in symptom management. The Positive–Negative Distinction: Although social support usually refers to positive, supportive social interactions (e.g., helping, encouraging, or caring), a growing number of researchers believe that negative, or countersupportive, social interactions (e.g., criticizing, avoiding, yelling, blaming, or stigmatizing) form a distinct pattern of social support related to mental health.

Negative social interactions have been described as interpersonal friction, interpersonal stress, social constraints, or simply as negative social support. Countersupportive social interactions have been demonstrated to be better predictors of PTSD symptoms exacerbation and the rapid decline of mental and physical health. Conversely, supportive social interactions have been reported to be better predictors of posttraumatic growth. Finally, the impact of countersupportive social interactions on psychological and physiological health can result in irreparable harm and intense suffering for someone with PTSD disability. Therefore, it is paramount for an individual with the disability of PTSD to have an adequate scale of social support from all social groups (family, work, community).. Separate measures for supportive and countersupportive social interactions should be carefully scrutinized to aide, and/or otherwise prevent increased suffering, from PTSD, and thereby, to ensure optimal functioning and control of the exacerbation of symptoms associated with PTSD disability.

16.     Defendant Mercy's discriminatory actions proximately caused Plaintiff Womack severe irreparable, psychological and physical harm, through Defendant Mercy's subjection to intimidation, hostility, harassment, humiliation, bullying and retaliation. Defendant Mercy's actions were negligent and often intentional infliction of emotional distress and harm to Plaintiff.

17.     Plaintiff's reports and complaints of abuse, harassment and hostility were substantially ignored by Defendant Mercy. Promises by supervisors and human

11

resources to address Plaintiff's reports and complaints were not kept. Defendants

human resource manager informed Plaintiff that discussions were ongoing, yet

Plaintiff was never notified of any possible solution or outcome and the abuse,

harassment, hostility, and discrimination were ongoing and continuous.

18.    Defendants held numerous meetings where upper management individuals

and other individuals became party to Plaintiff's protected health information and

by whom had no direct requirement to be present during discussions regarding

Womack's disability.

19.    Defendant Mercy refused to acknowledge Womack's disabilities and

refused to honestly and in good-faith engage in the interactive process. Beginning,

January of 2018, by formal request for accommodation and continuing at various

times throughout 2018, verbally and by electronic mail, Womack initiated

discussions and requested reasonable accommodation(s) related to her disability.

In addition, Womack was suffering from a compounding physical injury that

required surgery  as a result of the mass shooting for which, Plaintiff Womack

would require appropriate accommodation and safeguards to aide in her recovery.

Plaintiff was unfamiliar with the process of ADA and uncertain what solutions

were appropriate to ask for or necessary to help accommodate Plaintiff to

optimally work within the confines of her disability and physical injury. Plaintiff

Womack met with her medical providers and discussed her needs for

accommodation with regard to her disability pursuant to Plaintiff's current job

description and provided written suggestions.   As a suggestion from medical provider, Plaintiff also sought out and provided resources to Defendant Mercy from the U.S. Department of Labor, Office of Disability, Job Accommodation Network, (hereinafter referred to as JAN).   These resources were given to Defendants human resource manager, and subsequently Plaintiff's supervisor. The JAN resource suggested possible accommodations such as work from home or modified work schedule, flexibility and more time to do certain tasks, quiet workspace with fewer interruptions, receiving more detailed instructions and information in a way that would help Plaintiff with the way she was able to process information and perform tasks as well as adjustment of her workload and schedule, to allow for a treatment she needed, physical aides and modifications to the workplace/office. In March of 2018, Defendant's human resource manager requested that Plaintiff file additional ADA paperwork and provide medical proof of disability.  Plaintiff Womack, while recovering from surgery on February 23, 2018 and suffering from severe PTSD symptoms, completed required paperwork, provided proof of disability/medical information and forwarded resources from JAN.  Although, Plaintiff Womack knew she would require accommodations, in order to safely return to work, was nevertheless, eager to return to work and continue to heal in hopes of returning to an optimal state of health.  Plaintiff Womack was eager to engage in the interactive process in order to do so. On April 9, 2018, an "interactive process" meeting was held.  On the date of the interactive

13

process meeting, Plaintiff was unable to walk, drive or bear weight on her surgical extremity. These physical injuries, sustained in the shooting, were a painful, constant reminder of the trauma and the resulting PTSD disability. Unfortunately for Plaintiff, what Defendant Mercy's human resource manager called an "interactive process" was, in reality, nothing more than a threatening "ultimatum" meeting, wherein Defendant Mercy's, human resource manager, stated and was subsequently echoed by director of medical surgical nursing, "Return to work by tomorrow or your job will be posted".   Plaintiff Womack attempted to get a medical release from her surgeon so that she would not lose her job.   Plaintiff's physician approved Plaintiff's working from home with certain physical limitations but Defendant Mercy denied Plaintiff's request for working from home as a temporary accommodation.   Defendant Mercy's human resource manager mocked Plaintiff stating, "Can't you just prop your foot up on something" not only ignoring the severity of the injury to Plaintiff's operative extremity, but also her safety and difficulties navigating through a large facility, etc. and also, grossly, maliciously and negligently refused to acknowledge or discuss Plaintiff's PTSD disability and the accommodations requested and/or required.   Defendant Mercy offered Plaintiff Womack no reasonable accommodations during the "interactive process" meeting nor at any time since.   In attendance of the "interactive process meeting" regarding Plaintiff Womack's disability, were Emily Erikkson, executive director of nursing; Donna Poole, director of medical surgical nursing; Kristin

14

Biggerstaff, 4AB manager and direct supervisor, Sasha Brayton, 4CD manager and Susan McGinley, human resources manager.    Plaintiff Womack was intimidated, harassed, embarrassed, humiliated and suffered significant emotional distress as a result of the bullying behavior of upper management and the obvious pre-meditated campaign to not only threaten Plaintiff Womack of possible termination but also refuse to acknowledge and/or reasonably accommodate Plaintiff's injuries and disabilities.

20.    At the same time that Womack was seeking a reasonable accommodation, Defendant Mercy changed Womack's status from salaried to hourly and criticized her for working overtime hours, while also increasing her workload and job assignments. Plaintiff Womack continued to make every effort to perform her job(s) to the best of her ability and in spite of her disabilities and increasing exacerbation of symptoms related to her disability.    Defendant's actions were proximately responsible for the exacerbation of Plaintiff Womack's disability by their constant counter supportive actions (constant criticism without substance, increasing workload and giving directives without specific direction, or appropriate resources, refusal of flexibility and/or accommodation).

21.    Defendant breached Plaintiff's right to privacy by sharing details of Plaintiff's protected health information and sensitive employment and accommodation matters by allowing individuals with no direct "need to know" relevance to attend the "interactive process" meeting.

22.     In addition, Defendants breach of privacy led to a litany of discriminatory practices, harassing behavior, abusive comments, a hostile work environment and retaliation by Defendant Mercy's managerial staff resulting in physiological and psychological harm to Plaintiff Womack.

23.     Defendant Mercy never offered any reasonable accommodation or solution to Womack to assist her in the completion of the essential functions of her job duties.

24.     Defendant Mercy's failure to protect Womack's right to privacy together with the intentional disregard and acknowledgment of Plaintiff Womack's disability, contributed to creating a mob-like, hostile workplace from middle and upper management.   Womack was subjected to ongoing criticism, harassment, ridicule, meritless and retaliatory, disciplinary meetings and other conversations discussing Womack's employment performance and overtime worked, etc. once Plaintiff's disability was made known.   Defendants middle management together with human resources engaged in a campaign of discrimination, harassment and retaliation against Plaintiff because Plaintiff exercised her rights to request for an accommodation due to her disability.  Most times, these discriminatory campaigns were held in the presence of multiple individuals with various levels of managerial superiority to Plaintiff, creating an atmosphere of intimidation and contributing to an intentional and negligent infliction of emotional distress by Defendant and an adverse exacerbation of Plaintiffs disability.

25.   Despite Defendants refusal to engage in a reasonable dialogue regarding prospective accommodations that may amicably meet Plaintiff Womack's disability needs, Plaintiff subsequently did return to work, with restrictions but without any reasonable accommodation from Defendant in May, 2018.

26.   In the months that followed, Defendant Mercy created a hostile work environment that was severe and pervasive. For example, Womack was subjected to crude, unwanted and unwarranted outbursts by management in regards to Womack's disability.   As an example, Defendant Mercy's, manager of 4CD, crudely harassed, cursed and yelled at Plaintiff during a meeting when Plaintiff Womack mentioned she was having difficulty with focus and severe tremors that day,   Defendant Mercy's manager of 4CD crudely exclaimed, "Everyone has (expletive) anxiety, go smoke some (expletive) weed, go to your (expletive) therapist.  I don't care.  Just do your (expletive) job and follow your standard work".   Defendant Mercy's manager's harassing, unwanted and unwarranted, insensitive exclamations were reported by Plaintiff Womack but ignored by Defendant Mercy's human resources and med/surg director.   Defendant Mercy's inaction is a direct reflection of Mercy's organizational attitude of insensitivity towards employees with disabilities, such as Plaintiff Womack.

27.   In addition, Womack was further harassed and retaliated against by Defendant Mercy who prevented Plaintiff from pursuing another position within the organization.

17

28.     Womack was also the target of increased surveillance and monitoring not imposed on other employees. Defendant Mercy also threatened Womack's employment and conducted unjustified negative evaluation of her work.

29.     Womack was also treated less favorably than other Mercy employees, in similar positions, who required long term disability accommodation.

30.     While the Defendants allowed for Plaintiff to use earned and accrued time off to go to medical appointments and therapy, Defendants made no attempt to alter the workload nor allow Plaintiff more time to complete tasks thus allowing Plaintiff the opportunity for success from an employment prospective but also allowing Plaintiff the opportunity for optimal healing from her physical injuries and therapy and to adapt and learn new techniques, etc. to be able to work within the confines of her disability.   Defendants rigid constraints adversely affected Plaintiff's ability to undergo required physical therapy for her physical injuries, as well as necessary treatment and therapy for her PTSD disability.   Defendants constraints and actions led to permanent and irreparable harm to Plaintiff, physically and psychologically.

31.     Defendants actions led to an exacerbation of Plaintiff's PTSD symptoms and caused Plaintiff to suffer compounded and complex PTSD reactions and symptoms thus, requiring Plaintiff to undergo intensive therapy and additional medical attention.  Plaintiff also suffers from constant pain, periods of immobility and loss of function from her physical injury as a compounded result of

18

Defendants actions. In December, 2018, Plaintiff went on medical leave to receive treatment.

32.     In March, 2019, while Plaintiff was on medical leave and still receiving ongoing treatment for her disability, Defendant notified Plaintiff that her employment would be terminated because of her disability status being changed to long term disability. Plaintiff subsequently, inquired of any alternative options to termination, reporting that she has been qualified and capable of returning to work with few, simple accommodations and requested from Defendant any and all options to avoid termination, to include a trial "work from home" option, utilizing Mercy's currently available remote access technology that many co-workers in similar positions were able to use intermittently, part time or full time., in order to test Plaintiff's ability to perform the essential job duties as well as, any other option that may be amicable to Defendant. Defendant refused any further discussions, engaged in no interactive process and stated that no further options were available for Plaintiff to remain employed and that her termination would be effective, April 10, 2019.

33.     On April 10, 2019, Defendants terminated Plaintiffs employment while Plaintiff was on medical leave refusing any extension, accommodation or other amicable relief.

34.     Defendants blatant disregard of Plaintiff's notification of disability, their refusal to accommodate Plaintiff's request for any reasonable accommodation, the

willful and intentional infliction of emotional distress, their failure to address reports and pleadings from Plaintiff regarding the hostile and harassing working environment, has led to a downward spiral of permanent and irreparable psychological and physical harm to Plaintiff.

35.   Mercy's counter supportive, negligent and intentional actions has proximately caused Plaintiff Womack severe financial loss, loss of the enjoyment of life, and emotional distress that can never be given back.   Sadly, minor accommodations could have prevented the loss that Plaintiff has suffered

36.   Womack filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission and received a Notice of Suit Rights. This suit is timely brought within 90 days of receipt of the Notice of Suit Rights.

## FIRST CAUSE OF ACTION
## DISABILITY DISCRIMINATION
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## AMENDMENTS ACT OF 2008

37.   That Plaintiff hereby restates and incorporates by reference herein the foregoing paragraphs of the Complaint as though fully set forth herein.

38.   That Defendants Disability Discriminatory actions against Plaintiff as more fully set forth above, including but not limited to the following adverse actions:

39.   This claim is brought and jurisdiction lies pursuant to the Americans With Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12177, which

incorporates by reference Section 706 of Title VII of the Civil Rights Act of 1967, as amended, 42 U.S.C. § 2000e-5.

40.    Plaintiff is an individual with a "disability" as that term is defined in 42 U.S.C. § 12102(1).

41.    Plaintiff is a "person" within the meaning of Section 101(7) of the ADAAA, 42 U.S.C. § 12111(7), and Defendant is an "employer" within the meaning set forth in 42 U.S.C. § 12111 (5)(A).   Defendant is also a "covered" entity within the meaning of ADAAA Section 101(2), 42 U.S.C. § 12111(2).

42.    Plaintiff, with a reasonable accommodation, could perform the essential functions customarily and routinely assigned to her within Defendant's workplace.

43.    Plaintiff has been a "qualified individual with a disability" at all times material hereto.

44.    Plaintiff's disability was improperly a motivating factor in Plaintiff's termination in violation of 42 U.S.C. § 12112(a).

45.    Defendant Mercy unlawfully discriminated against Plaintiff through disparate treatment.

46.    Plaintiff alleges that she was not allowed the same accommodation and privileges that certain other co-workers, in similar job categories and/or responsibilities were given but denied Plaintiff the same accommodation and privilege based on her disability.

47.    As a direct and proximate result of Defendant's aforementioned wrongful conduct, Plaintiff has sustained substantial economic loss including past and future compensation, and other economic benefits.  Plaintiff has further sustained loss of financial stability, peace of mind, and future security, and has suffered embarrassment, humiliation, mental anguish and emotional distress and discomfort, *irreparable physical and psychological harm* and loss enjoyment of life, all to her detriment and damage in an amount in excess of $75,000.00.

WHEREFORE, Plaintiff demands judgment against Defendant:

(1)    That judgment be entered declaring that Plaintiff was unlawfully discriminated against by Defendant in violation of the ADAA, as amended;

(2)    That Defendant be ordered to make Plaintiff whole by providing back pay and any and all other remedies authorized by the ADAA, as amended, and all other statutory allowance, including but not limited to salary and benefits, and accrued interest from the date of her termination until entry of judgment against Defendant and for compensatory damages for Plaintiff's mental anguish, pain and suffering, and other non-pecuniary losses, including punitive damages allowed by law;

(3)    That Plaintiff be awarded her costs and expenses of this litigation including reasonable attorney's fees and expert witness fees; and

(4)    That Plaintiff be granted such legal and equitable relief as the Court may deem just and proper.

(5)    Based on Defendant's willful, malicious, despicable and oppressive acts of discrimination against Plaintiff, she seeks an award of other, special damages recoverable under applicable state and federal laws, in an amount

according to proof.   Defendant's conduct was in extreme disregard and indifference to Plaintiff's rights.

## SECOND CAUSE OF ACTION
### VIOLATION OF THE ADAAA
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, (ADEA) AND THE AMERICANS WITH DISABILITIES ACT OF 1990, (ADA)
### HARASSMENT - HOSTILE WORK ENVIRONMENT

48.    That Plaintiff hereby restates and incorporates by reference herein the foregoing paragraphs of the Complaint as though fully set forth herein.

49.    That Defendants actions constituting Harassment and Hostile Work Environment and all other  actions against Plaintiff as more fully set forth above, including but not limited to the following adverse actions:

50.    Plaintiff was qualified for her job and performed all of her duties and responsibilities in a satisfactory manner as alleged above.

51.    Defendant's workplace was permeated with discriminatory intimidation and abuse, creating a hostile work environment based on Plaintiff's disability as alleged above.

52.    Defendant's harassing behavior began after Plaintiff filed ADA paperwork for workplace accommodation related to her disability.  Plaintiff's complaints of harassment, intimidation and a hostile work environment were ignored by Defendant

53.    The discriminatory intimidation was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and to create an abusive working environment as alleged above. The discriminatory intimidation was unwelcome and unwanted because Plaintiff did not solicit or incite the conduct and she regarded it as undesirable, offensive, and a proximate cause of the exacerbation of her disability and ultimate cause of her termination.

54.    The discriminatory intimidation was sufficiently severe or pervasive, in both subjective and objective terms, to create an objectively harassing, hostile or abusive work environment that altered the terms and conditions of Plaintiff's employment. Defendants Mercy knew or should have known about the harassment as described herein, had the authority to control the harassers' conduct or otherwise protect Plaintiff from the harassment, but it failed to take prompt and appropriate corrective action, that led to Plaintiff's exacerbation of symptoms and conditions that required Plaintiff to take medical leave for treatment and instead terminated Plaintiff, the victim of the severe or pervasive harassment.

55.    As a direct and proximate result of Defendant's aforementioned wrongful conduct, Plaintiff has sustained substantial economic loss including past and future compensation, and other economic benefits.    The negligent and/or intentional conduct and infliction of emotional distress and harassment has caused Plaintiff to suffer extreme mental anguish, psychological and physiological harm, in the workplace, and has also caused Plaintiff to suffer marital and familial strain,

severe anxiety, distress and discomfort, extreme humiliation and embarrassment, feelings of dread and isolation, insomnia, agoraphobia and other exacerbated symptoms of her disability necessitating increased therapy sessions, medications and medical attention.   Plaintiff's sustained loss of financial stability, peace of mind, and future security, immense suffering from severe mental anguish, emotional distress and discomfort, permanent and irreparable harm, severe progression of her disability and loss of enjoyment of life, all to her detriment and damage in an amount in excess of $75,000.00.

WHEREFORE, Plaintiff demands judgment against Defendant:

(1)   That judgment be entered declaring that Plaintiff was unlawfully discriminated against by Defendant's Harassment in violation of the ADAA, as amended;

(2)   That Defendant be ordered to make Plaintiff whole by providing back pay and any and all other remedies authorized by the ADAA, as amended, and all other statutory allowance, including but not limited to salary and benefits, and accrued interest from the date of her termination until entry of judgment against Defendant and for compensatory damages for Plaintiff's mental anguish, pain and suffering, and other non-pecuniary losses, including punitive damages allowed by law;

(3)   That Plaintiff be awarded her costs and expenses of this litigation including reasonable attorney's fees and expert witness fees; and

(4)   That Plaintiff be granted such legal and equitable relief as the Court may deem just and proper.

(5)   Based on Defendant's willful, malicious, despicable and oppressive acts of discrimination against Plaintiff, she seeks an award of other, special

damages recoverable under applicable state and federal laws, in an amount according to proof.   Defendant's conduct was in extreme disregard and indifference to Plaintiff's rights.

## THIRD CAUSE OF ACTION-FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT

56.    That Plaintiff hereby restates and incorporates by reference herein the foregoing paragraphs of the Complaint as though fully set forth herein.

57.    That Defendants Failure to Accommodate actions against Plaintiff as more fully set forth above, including but not limited to the following adverse actions:

58.    Defendant refused to provide Plaintiff a reasonable accommodation.

59.    That as a direct and proximate result of Defendant's aforementioned wrongful conduct, Plaintiff has sustained substantial economic loss including past and future compensation, and other economic benefits.   Plaintiff has further sustained loss of financial stability, peace of mind, and future security, and has suffered embarrassment, humiliation, mental anguish and emotional distress and discomfort, and loss enjoyment of life, all to her detriment and damage in an amount in excess of $75,000.00.

WHEREFORE, Plaintiff demands judgment against Defendant:

(1)    That judgment be entered declaring that Plaintiff was unlawfully discriminated against by Defendant in violation of the ADAA, as amended;

(2)    That Defendant be ordered to make Plaintiff whole by providing back pay and any and all other remedies authorized by the ADAA, as amended, and all other statutory allowance, including but not limited

to salary and benefits, and accrued interest from the date of her termination until entry of judgment against Defendant and for compensatory damages for Plaintiff's mental anguish, pain and suffering, and other non-pecuniary losses, including punitive damages allowed by law;

(3)     That Plaintiff be awarded her costs and expenses of this litigation including reasonable attorney's fees and expert witness fees; and

(4)     That Plaintiff be granted such legal and equitable relief as the Court may deem just and proper.

(5)     Based on Defendant's willful, malicious, despicable and oppressive acts of discrimination against Plaintiff, she seeks an award of other, special damages recoverable under applicable state and federal laws, in an amount according to proof.   Defendant's conduct was in extreme disregard and indifference to Plaintiff's rights.

## FOURTH CAUSE OF ACTION- RETALIATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA), TITLE V OF THE AMERICANS WITH DISABILITIES ACT (ADA), SECTION 501 OF THE REHABILITATION ACT, THE EQUAL PAY ACT (EPA), AND TITLE 11 OF THE GENETIC INFORMATION AND NONDISCRIMINATION ACT (GINA) AND THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT

60.     That Plaintiff hereby restates and incorporates by reference herein the foregoing paragraphs of the Complaint as though fully set forth herein.

61.     That Defendants Retaliatory actions against Plaintiff as more fully set forth above, including but not limited to the following adverse actions: Plaintiff hereby restates and incorporates by reference herein the foregoing paragraphs of this Complaint as though fully set forth herein.

27

62.     The retaliatory actions of Defendant against Plaintiff as more fully set forth

above, including but not limited to the following adverse actions:

a.      work-related threats, warnings, or reprimands;

b.      negative and false accusations and evaluations regarding Plaintiff's

work;

c.      prevention of internal transfer

d.      Defendant's supervisory staff making false reports and allegations

about Plaintiff to other co-workers and upper management

e.      scrutinizing work and attendance more closely than that of other

employees, without justification;

f.      Defendants engaged in abusive verbal and threatening behaviors

towards Plaintiff that deterred productivity and led to a hostile work

environment.

g.      Defendants caused Plaintiff's work to be more difficult by doubling

the workload, giving less time to complete the work, failing to provide

resources and tools necessary to complete the work, increased scrutiny of

work and time to perform the work, causing re-work, re-verify that work

had been done to numerous supervisors, and requiring Plaintiff to perform

the same work in different ways according to the preferences of different

supervisors, withholding of necessary information to do tasks and failing to

pass along critical information, setting a work schedule but requiring

attendance to meetings outside the work schedule and reprimanding Plaintiff for overtime hours.

h.      Defendant retaliating against Plaintiff by preventing an internal transfer; and

i.      Defendant's retaliating against Plaintiff by termination of Plaintiff.

63.   Plaintiff alleges that Defendant Mercy retaliated against her because of :

a.      Plaintiff's request for reasonable accommodations for her disability;

b.      Plaintiff exercising her rights;

c.      Plaintiff's complaints about harassment and abuse regarding her disability.

64.   Plaintiff alleges that Defendant Mercy ultimately retaliated against her because of Plaintiff's disability and because Plaintiff required additional non-FMLA time to recover from her disability.  Plaintiff had a need for and requested reasonable accommodations and because Plaintiff opposed the discrimination and retaliation.  Defendant Mercy actions constitutes <u>unlawful retaliation based on disability in violation of applicable state and federal laws.</u>

65.   Defendant Mercy's actions against Plaintiff Womack constitute unlawful harassment and retaliation.

66.   That as a direct and proximate result of Defendant's aforementioned wrongful conduct, Plaintiff has sustained substantial economic loss including past and future compensation, and other economic benefits.   Plaintiff has further

sustained loss of financial stability, peace of mind, and future security, and has suffered embarrassment, humiliation, mental anguish and emotional distress and discomfort, and loss enjoyment of life, all to her detriment and damage in an amount in excess of $75,000.00.

WHEREFORE, Plaintiff demands judgment against Defendant:

(1)     That judgment be entered declaring that Plaintiff was unlawfully discriminated against by Defendant in violation of the ADAA, as amended;

(2)     That Defendant be ordered to make Plaintiff whole by providing back pay and any and all other remedies authorized by the ADAA, as amended, and all other statutory allowance, including but not limited to salary and benefits, and accrued interest from the date of her termination until entry of judgment against Defendant and for compensatory damages for Plaintiff's mental anguish, pain and suffering, and other non-pecuniary losses, including punitive damages allowed by law;

(3)     That Plaintiff be awarded her costs and expenses of this litigation including reasonable attorney's fees and expert witness fees; and

(4)     That Plaintiff be granted such legal and equitable relief as the Court may deem just and proper.

(5)     Based on Defendant's willful, malicious, despicable and oppressive acts of discrimination against Plaintiff, she seeks an award of other, special damages recoverable under applicable state and federal laws, in an amount according to proof. Defendant's conduct was in extreme disregard and indifference to Plaintiff's rights.

67.     As a proximate result of the acts of Defendant as described above Plaintiff suffered economic damages including lost wages and benefits and other compensatory damages in an amount to be ascertained at the time of trial.

68.    As a further proximate result of the aforementioned acts of Defendant as alleged above, Plaintiff has suffered humiliation, mental anguish and severe emotional and physical distress and has been injured in body and mind all to Plaintiffs damage in an amount to be ascertained at the time of trial.

69.    As a proximate result of the acts of Defendant as alleged above Plaintiff has suffered physical and mental injuries and has necessarily expended sums in the treatment of such injuries all to Plaintiffs damage in an amount to be ascertained at the time of trial.

70.    As a further proximate result of the acts of Defendant as alleged above Plaintiff will necessarily continue to expend sums in the future fort he treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendants acts in an amount to be ascertained at the time of trial.

71.    As a direct and proximate result of the above described acts of Defendant Plaintiff has necessarily incurred attorney's fees and costs and pursuant to the provisions of applicable state and federal laws, Plaintiff is entitled to the reasonable value of such attorney's fees.

72.    The above described acts of Defendant were willful intentional and malicious and done with the intent to vex, injure and harass Plaintiff and were done in conscious disregard of Plaintiff's rights and thus warrant the imposition of exemplary and punitive damages in an amounts sufficient to punish said Defendant and to deter others from engaging in similar despicable conduct.

Dated this 26th day of July, 2019.

DEMAND FOR JURY TRIAL:

Kimberly S. Womack, pro se
12905 Elrond Drive
Oklahoma City, OK  73170
(405) 312-3189 or (405) 306-5464